**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ERVING MIGUEL MARTINEZ, *on*
*behalf of himself, FLSA Collective Plaintiffs,*
*and the Class*,

                        Plaintiff,

        -against-

GAB.K, LLC
        d/b/a GABRIEL KREUTHER
        d/b/a KREUTHER HANDCRAFTED
        CHOCOLATE
TETON RESTAURANT GROUP, LLC, and
GABRIEL KREUTHER,

                     Defendants.

---

Case No.:

**COLLECTIVE AND CLASS**
**ACTION COMPLAINT**

        Plaintiff ERVING MIGUEL MARTINEZ ("Plaintiff "), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Collective and Class Action Complaint against Defendants, GAB.K, LLC d/b/a GABRIEL KREUTHER and also d/b/a KREUTHER HANDCRAFTED CHOCOLATE, TETON RESTAURANT GROUP, LLC ("Corporate Defendants"), and GABRIEL KREUTHER ("Individual Defendant," and together with Corporate Defendants, "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to an invalid tip credit, (2) illegally retained tips, (3) improper meal credit deductions, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to an invalid tip credit, (2) illegally retained tips, (3) improper meal credit deductions; (4) unreimbursed uniform costs; (5) unpaid spread of hours premiums, (6) statutory penalties, (7) liquidated damages, and (8) attorneys' fees and costs.

3.      Plaintiff brings additional claims, pursuant to the New York City Human Rights Law, N.Y.C. Admin. Code§ 8-101 *et seq.* ("NYCHRL"), due to Defendants' unlawful discrimination against him and other similarly situated employees on the basis of their race and national origin, that they are entitled to recover from Defendants (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

4.    Plaintiff brings additional claims, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), due to Defendants' unlawful discrimination against him and other similarly situated employees on the basis of their race and national origin, that they are entitled to recover from Defendants: (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

7.     Plaintiff ERVING MIGUEL MARTINEZ is a resident of Queens County, New York.

8.     Corporate Defendant, GAB.K, LLC, is a domestic liability company organized under the laws of the State of New York, with a principal place of business located at 41 W 42nd St, New York, NY 10036 and an address for service of process located at 711 Third Avenue, 14th Floor, New York, NY 10017.

9.     Corporate Defendant, TETON RESTAURANT GROUP, LLC, is a foreign limited liability company formed under the laws of the state of Wyoming with an address for service of process located at 2500 Moose Wilson Rd., Wilson, WY 83014.

10.     Individual Defendant GABRIEL KREUTHER is the Executive Chef and Owner of Corporate Defendant GAB.K, LLC, d/b/a GABRIEL KREUTHER and also d/b/a KREUTHER HANDCRAFTED CHOCOLATE. Individual Defendant GABRIEL KREUTHER controls and manages the daily operations of the Corporate Defendants.

11.     Corporate Defendants GAB.K. LLC and TETON RESTAURANT GROUP, LLC. worked in cooperation with respect to the formation, operation, and management of the restaurant GABRIEL KREUTHER (the "Restaurant") located at 41 W 42nd Street, New York, NY 10036.

   a)   TETON RESTAURANT GROUP, LLC is listed among the principals for the Restaurant's Liquor License. **Exhibit A.**

   b)   TETON RESTAURANT GROUP, LLC was named as one of the signatories when the Restaurants acquired a new space based on an article in 2015. **Exhibit B.**

12.     Individual Defendant GABRIEL KREUTHER is the owner and founder of the Restaurant. Defendant GABRIEL KREUTHER exercised control over the employment terms and

conditions of Plaintiffs, FLSA Collective Plaintiffs, and Class Members. Individual Defendant GABRIEL KREUTHER had and exercised the power and authority to (and also delegates to managers and supervisors the power to) fire and hire, determine rate and method of pay, determine work schedules, and otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs, and Class Members. Individual Defendant GABRIEL KREUTHER exercised functional control over the business and financial operations of the Restaurant. Individual Defendant GABRIELKREUTERS controls the day-to-day operations of the Restaurant. Individual Defendant GABRIEL KREUTHER ensures that the business is operating efficiently and profitably.

13.    Plaintiff personally observed Defendant GABREAL KREUTHER  take an active role in managing the day-to-day operations of the Restaurant including giving orders to Plaintiff and his co-workers on work related duties, directing the general business direction of the Restaurant, discipling employees for misconduct up to and including termination, adjust the schedule of employees, and adjust the compensation rate of individual employees including Plaintiff.

14.    At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and the regulations thereunder.

15.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

16.    Plaintiff bring claims for relief as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt "front-of-house" employees (including but not limited to servers, bussers, food runners, bartenders, barbacks, among others) employed by

Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

17.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs were tipped employees who have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs (i) their proper wages, including overtime, due to invalid tip credits and (ii) illegally retained gratuities. Defendants were not entitled to take any tip credits under the FLSA, or to compensate Plaintiff and FLSA Collective Plaintiffs at a sub-minimum wage hourly rate, because they failed to satisfy all statutory requirements for taking a tip credit.

18.     The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

19.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff bring claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt "front-of-house" employees (including but not limited to servers, bussers, food runners, bartenders, barbacks, among others) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Members" or the "Class").

21.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

22.     The Class further includes a subclass of employees, all of whom are tipped front-of-house Spanish speaking employees ("Sub-Class") employed by Defendants. The Sub-Class brings within this complaint discrimination claims, separate from the wage and hour claims. Defendants subjected members of the Sub-Class to unlawful discrimination based on their ethnic background. Plaintiff is both a member of the Class and Sub-Class,

23.     The proposed Class is so numerous that a joinder of all Class Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class. There are also more than forty (40) members within the Sub-Class.

24.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices Defendants, as alleged herein, of (1) failure to pay the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet the statutory requirements under the New York Labor Law, (2) illegal retention of tips earned by Plaintiff and the Class, (3) improper meal credit deductions, (4) unreimbursed uniform expenses

(5) failure to pay spread of hours premiums for workdays with a spread of ten or more hours, (6) failure to provide proper wage statements, and (7) failure to provide proper wage and hour notices. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

25.    Plaintiff's claims are also typical of the Sub-Class. Defendants operate a restaurant that hired a variety of multi-lingual front-of-house staff, an overwhelming number of whom can communicate in other languages such as French, German, and Spanish. For some, it is the only language they speak because English is not their primary language. Defendants specifically targeted Plaintiff and Sub-Class members by prohibiting them from speaking Spanish. No such prohibition was enforced on other staff, who spoke languages other than Spanish. As a result, Defendants' practice affected all Sub-Class members equally.

26.    Plaintiff and the Class suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for continuous periods of time which exceeded 30 minutes; (iii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for 2 hours or 20% of their daily shift; (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, (v) included managers and non-tipped employees in the tip pool, (vi) and failed to accurately keep track of daily tips earned and maintain records.

27.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

28.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29.     Defendants and other employers throughout the United States violate state labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect

retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30.     These are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a.  Whether Defendants employed Plaintiff and the Class Members within the meaning of federal and New York law;

b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants, regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d.  Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

e.  Whether Defendants paid Plaintiff and Class Members the proper wage for all hours worked;

f.  Whether Defendants properly provided notice to Plaintiff and Class Members that Defendants were taking a tip credit;

g.  Whether Defendants illegally retained portions of tips earned by Plaintiff and Class Members;

h.  Whether Defendants mandated an unlawful tip-pooling scheme whereby Plaintiff and the Class Members were required to share tips earned with managers and other non-tipped employees;

i.  Whether Defendants accurately tracked the amount of tips earned by Plaintiff and Class Members each day and maintained records thereof;

j.  Whether Defendants required Plaintiff and Class Members to engage in non-tipped duties for continuous periods of time exceeding 30 minutes;

k.  Whether Defendants required Plaintiff and Class Members to engage in non-tipped duties for two hours or twenty percent (20%) of their daily shifts;

l.  Whether Defendants required Plaintiff and Class Members to engage in non-tipped duties for continuous periods of time which exceeded 30 minutes;

9

m.  Whether Defendants required Plaintiff and Class Members to maintain their uniforms out of pocket;

n.  Whether Defendants took the proper amount of tip credit allowance from Plaintiff and Class Members for each payment period under the New York Labor Law;

o.  Whether Defendants provided proper wage statements informing (i) Plaintiff and Class Members of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the New York Labor Law;

p.  Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to Plaintiff and Class Members, per requirements of the New York Labor Law;

q.  Whether Defendants improperly deducted meal credits from Plaintiff and Class Members;

r.  Whether Defendants prohibited other non-Spanish speaking employees from communicating in their native language;

s.  Whether Defendants prohibited Plaintiff and Sub-Class Members from speaking Spanish in violation of NYSHRL and NYCHRL; and

t.  Whether Defendants had policies and practices in place to prohibit Plaintiff and Sub-Class Members from speaking Spanish.

## STATEMENT OF FACTS

31.    In or about September 2018, Plaintiff ERVING MIGUEL MARTINEZ was hired by Defendants to work as a busser at the Restaurant, located at 41W 42nd Street, New York, NY 10036. Plaintiff worked for Defendants until his termination on June 19, 2023.

32.    From in or around September 2018 until December 31, 2018, Plaintiff was compensated by Defendants at the tipped credit minimum wage of eight dollars and sixty-five cents ($8.65) per hour plus tips. From January 1, 2019, until the end of his employment, Plaintiff was compensated by Defendants at the tipped credit minimum wage of ten dollars ($10.00) per hour plus tips. FLSA Collective Plaintiffs and Class Members were paid at similar hourly rates.

33.    With respect to Plaintiff, FLSA Collective Plaintiffs, and Class Members, Defendants were not entitled to claim any tip credit allowances under the FLSA or the NYLL

because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) implemented an invalid tip pooling scheme in which managers and non-tipped employees were included in the tip pool; (iii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for continuous periods of time which exceeded 30 minutes; (iv) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for 20% or 2 hours of their daily shift; and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

34.     From the start of his employment until the end of his employment, Plaintiff was regularly scheduled by Defendants to work four (4) days per week, from 3:30 p.m. to 12:30 a.m. for nine (9) hours per day. In addition, Plaintiff was consistently required to work an additional day that is a double shift, from 11:00 a.m. to 12:30 a.m., for 49.5 hours per week.

*Wage and Hour Claims*

35.     Although Plaintiff and FLSA Collective Plaintiffs were tipped employees, Defendants would require Plaintiff and FLSA Collective Plaintiffs to engage in side-work, including polishing silverware, cleaning bathrooms, and other porter related duties, which comprised over 3 hours per day. At the end of every shift, Plaintiff and other tipped employees were required by Defendants to spend at least 1.5 hours performing non-tipped closing duties. In addition, there was a 30-minute staff meeting daily.

36.     Although Plaintiff worked days with a spread of ten or more hours, Defendants always failed to compensate spread of hours premiums to Plaintiff for such days. Defendants similarly failed to pay spread of hours premiums to Class Members for their workdays with a spread of ten or more hours.

37.     Throughout Plaintiff's employment, Defendants directly retained a portion of tips, surcharges, and gratuities earned by Plaintiff, FLSA Collective Plaintiffs, and Class Members. Further, Defendants instituted an invalid tip pool that included managers and non-tipped employees, thereby improperly distributing tips to invalid tip pool members that were earned by Plaintiff, FLSA Collective Plaintiffs, and Class Members.

38.     Specifically, Defendants' tip pool improperly allocated points to polishers, whose duties are to polish silverware and glasses and who never serve customers. Additionally, Defendants retained at least 50% of all gratuity or other charges earned during private events. Defendants never notified Plaintiff, FLSA Collective Plaintiffs, and Class Members of their individual shares in the tip pool or tracked the amount of tips earned by them. When Plaintiff, FLSA Collective Plaintiffs, and Class Members asked to see the daily tip or gratuity results, they were never provided with any tip sheets.

39.     Due to Defendants' (i) lack of tip tracking, (ii) inclusion of invalid tip pool members, (iii) improper delegation of tip pool distribution responsibilities to employees unfit for such roles, and (iv) direct tip retention, Plaintiff, FLSA Collective Plaintiffs, and Class Members, at all times, failed to (i) have reliable knowledge of their tips earned, (ii) earn their proper tip distributions, and (iii) keep all tips rightfully earned by them.

40.     At all times, Defendants' above detailed tip retention schemes also applied to tips, gratuities, and surcharges earned by Plaintiff, FLSA Collective Plaintiffs, and Class Members from large parties or private events hosted at Defendants' Restaurant.

41.     Throughout his employment, Defendants improperly deducted a meal credit from Plaintiff's wages under FLSA § 203(m) and NYCRR § 146-1.9, without regard to whether the meal credit deducted exceed the meals' "reasonable cost"[1], whether the meals provided satisfied

---

[1] 29 C.F.R. § 531.3

New York State's nutritional requirements containing all four food groups[2], whether employees actually consumed the credited meals or not, and whether employees consumed the credited meals during a reasonable meal period or not. Defendants' meal credit deductions were improper because (1) they did not provide a proper meal which includes at least one of the types of food from all four of the following groups: (i) fruits or vegetables; (ii) grains or potatoes; (iii) eggs, meat, fish, poultry, dairy, or legumes; and (iv) tea, coffee, milk, or juice; and (2) all the meals offered to Plaintiff were leftovers and not edible. As a result, Defendants claimed improper meal credits from Plaintiff every day. Similarly, FLSA Collective Plaintiffs and Class Members were improperly deducted for meal credits every day.

42.    From the beginning of his employment until around 2021, Plaintiff had to regularly pay out-of-pocket to maintain his unform, which consists of black pants, black shoes, white shirt, black tie and black suit. Defendants required Plaintiffs' uniforms to be "spotless [and] ironed" and shoes to be "polished". **Exhibit C**, page 17. Although Defendants began dry cleaning Plaintiff's blazer for him starting in 2021, Plaintiff was responsible for dry cleaning all other parts of his uniform. Defendants' uniform policies also applied to Class Members.

43.    Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

44.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employments with Defendants.

---

[2] NYCRR § 146-3.7

45.    Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

46.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

47.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants'

failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

48.     Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

49.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

50.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

51.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on

employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct.,

Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based

on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846,

846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected

on his final year paystub and W-2").[3]

52.    The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce

the amount of social security benefits available to the employee, as an employee's entitlement to

benefits reflects how much money he or she is reported as having contributed to the social security

system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March

19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA]

. . . [and] the worker's earnings are used to determine insured status for entitlement to retirement

and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400

(1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011)

("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an

individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

53.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit

have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL

absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200

W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar.

---

[3] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees'
last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of
wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section
402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions
(as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages
listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2
are derived from paysubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial
information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and
other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring
to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4, 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

54.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

55.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

56.     This case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

57.     Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

58.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

59.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiffs and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to their social security benefits as soon as Defendants sent their W-2s to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

60.     Defendants knowingly and willfully operated their business with a policy of not providing wage notices and accurate wage statements of Plaintiff, FLSA Collective Plaintiffs, and Class Members in violation of the WTPA and NYLL.

61.     Defendants knowingly and willfully operated their business with a policy of deducting invalid tip credits from the wages of Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

62.     Defendants knowingly and willfully operated their business with a policy of illegally retaining gratuities from Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

63.     Defendants knowingly and willfully operated their business with a policy of misappropriating tips earned by Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

64.     Defendants knowingly and willfully operated their business with a policy of deducting invalid meal credits from the wages of Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

65.     Defendants knowingly and willfully operated their business with a policy of failing to pay spread of hours premiums to Plaintiff and Class Members for days worked with a spread of ten or more hours, in violation of the NYLL.

*Racial Discrimination Claims*

66.     Plaintiff is of Hispanic descent and does not speak English fluently.

67.     Throughout his employment, Plaintiff was forbidden to speak Spanish both on and off the floor to communicate with his co-workers or managers.

68.     Plaintiff personally observed Managers Julian [Last Name Unknown] and Mike [Last Name Unknown] routinely inform floor staff, including Plaintiff, that they were forbidden to speak Spanish to each other or to customers on the floor. Defendants and their management knew that Plaintiff and other Spanish speaking staff have difficulties communicating in English but implemented this ban regardless.

69.     Defendants implemented this ban despite the fact that its employee handbook actually encourages proficiency in multiple languages. **Exhibit C,** page 39-50.

70.     Defendants knew that it was wrong for them to ban their staff from speaking Spanish but implemented the ban regardless. Defendants, therefore, willfully discriminated against Plaintiff and other Spanish speaking staff.

71.     As a direct result, Plaintiff and other Spanish speaking employees were unfairly discriminated against in violation of NYSHRL and NYCHRL. Plaintiff intends to represent a class of employees who were similarly violated, and the requirements of Fed. R. Civ. P. 23 are satisfied.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

**(Brought individually and on behalf of the Collective Plaintiffs)**

72.    Plaintiff reallege and incorporate all the above allegations as if fully set forth herein.

73.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

74.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

75.    At all relevant times, Defendants had gross annual revenues in excess of $500,000.

76.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, due to an invalid tip credit.

77.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs all tips owed due to an invalid tip pooling policy.

78.    At all relevant times, Defendants had a policy and practice of unlawfully retaining the tips, gratuities and surcharges of Plaintiff and FLSA Collective Plaintiffs.

79.    At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA by instituting a tip pooling scheme where Plaintiff and FLSA Collective Plaintiffs were subject to a tip pool they did not agree to, which was set by and enforced by Defendants. Defendants failed to maintain tip sheets and failed to inform Plaintiff and FLSA Collective Plaintiffs of their respective tip pool contributions. Further, Defendants' tip pool improperly included non-tipped employees such as polishers. As a result, Defendants illegally misappropriated

their tips through the tip pooling arrangement. Such improper tip pooling policy also invalidates Defendants' tip credit allowance.

80.    At all relevant times, Defendants had a policy and practice of improperly deducting meal credits from Plaintiff and FLSA Collective Plaintiffs.

81.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

82.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

83.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to an invalid tip credit, damages representing all improperly deducted meal credits, and damages representing disgorgement of illegally retained tips, plus an equal amount as liquidated damages.

84.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

85.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

**(Brought individually and on behalf of the Class)**

86.     Plaintiff reallege and incorporate all the above allegations as if fully set forth herein.

87.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

88.     Defendants willfully violated Plaintiff's and Class Members' rights by improperly deducting meal credits from Plaintiff and Class Members, regardless of whether the meal credit deducted exceed the meals "reasonable cost", whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, whether Plaintiff and Class Members consumed the meals in question, and whether Plaintiffs and Class Members consumed the meals in question during a reasonable meal period.

89.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them proper wages in the lawful amount for hours worked because Defendants were not entitled to claim any tip credits.

90.     Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by instituting an illegal tip pooling scheme in which the tip pool included non-tipped employees such as polishers. In doing so, Defendants willfully deprived Plaintiff and Class Members of their lawfully earned wages.

91.     Defendants knowingly and willfully directly retained tips, gratuities and surcharges from Plaintiff and Class Members.

92.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.  Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the

requirements under the NYLL because such tip credit allowance was never clearly included in wage statements to tipped employees for each payment period. Defendants also provided fraudulent wage statements that failed to accurately reflect the proper compensation, including tips illegally withheld from Plaintiff and Class Members.

93.    Defendants knowingly and willfully failed to compensate spread of hours premiums to Plaintiff and Class Members for workdays with a spread of ten or more hours.

94.    Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiff, as required by New York Labor Law § 195(1).

95.    Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff with every wage payment, as required by New York Labor Law § 195(3).

96.    Defendants knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to pay Plaintiff and Class Members all of the wages they were due (including overtime wages) when Defendants knew or should have known such was due, and their failure to provide Plaintiff and other Class Members with accurate wage statements.

97.    Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their damages for unpaid wages due to an invalid tip credit, unpaid tip compensation due to an invalid tip pooling policy, damages representing disgorgement of illegally retained tips, damages representing all improperly deducted meal credits, statutory penalties, liquidated damages, and reasonable attorneys' fees and costs, pursuant to New York Labor Law.

## COUNT III

## DISCRIMINATION UNDER THE

## NEW YORK CITY HUMAN RIGHTS LAW

### (Brought individually and on behalf of the Sub-Class)

98.     Plaintiff reallege and incorporate all the above allegations as if fully set forth herein.

99.     The New York City Administrative Code §8-107(1) provides that:

"It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

100.     Defendants forbade Plaintiff and other Spanish speaking employees from speaking and communicating in Spanish despite knowing that Spanish was their preferred language. This resulted in Plaintiff and other Spanish speaking employees being unable to speak or communicate during work because they could not speak fluent English.

101.     Defendants violated the New York City Human Rights Law when they discriminated against Plaintiff and other Spanish speaking employees on the basis of their race and national origin.

102.     The discriminatory conduct was in willful disregard of the provisions of the NYCHRL.

103.     As a direct and proximate result of Defendants' willful disregard of the NYCHRL, Plaintiff and other Spanish speaking employees suffered damages in the form of past and future emotional distress. Plaintiff and other Spanish speaking employees seek all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

**COUNT IV**

**DISCRIMINATION UNDER THE**

**NEW YORK STATE HUMAN RIGHTS LAW.**

**(Brought individually and on behalf of the Sub-Class)**

104.    Plaintiff realllege and incorporate all the above allegations as if fully set forth herein.

105.    The New York State Executive Law § 296(1)(a) provides that:

"It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

106.    Defendants forbade Plaintiff and other Spanish speaking employees from speaking and communicating in Spanish despite knowing that Spanish was their preferred language. This resulted in Plaintiff and other Spanish speaking employees being unable to speak or communicate during work because they could not speak fluent English.

107.    This discriminatory conduct was in willful disregard of the provisions of the NYSHRL.

108.    As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff and other Spanish speaking employees suffered damages in the form of lost past and future emotional distress. Plaintiff and other Spanish speaking employees seek all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court assume jurisdiction herein and thereafter grant the following relief:

 a. A declaratory judgment that the practices complained of herein are unlawful under the NYSHRL, NYCHRL, FLSA and the NYLL;

 b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

 c. An award of unpaid wages, including overtime, due to an invalid tip credit, due under the FLSA and the NYLL;

 d. An award equal to the amount of the improperly retained tips, gratuities, and surcharges withheld by Defendants, due under the FLSA and the NYLL;

 e. An award equal to the amount of tips Defendants misappropriated through their invalid tip pool, due under the FLSA and the NYLL;

 f. An award of unpaid wages due to Defendants' improper meal credit deductions, due under the FLSA and the NYLL;

 g. An award of unpaid spread of hours premiums, due under the NYLL;

 h. An award of unreimbursed uniform expenses, due under the NYLL;

 i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages due to an invalid tip credit, proper tips due to an invalid tip pooling policy, illegal retention of gratuities, and invalid meal credit deductions, pursuant to the FLSA;

j.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages due to an invalid tip credit, proper tips due to an invalid tip pooling policy, invalid meal credit deductions, unpaid spread of hours premiums, and illegal retention of gratuities, pursuant to the NYLL;

k.  An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

l.  An award of compensatory and punitive damages for Plaintiffs and Sub-Class of Spanish speakers who were not allowed to speak Spanish;

m.  An award of prejudgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

n.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

o.  Designation of this action as a class action pursuant to F.R.C.P. 23;

p.  Designation of Plaintiff as Representative of the Class; and

q.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: January 17, 2024                                                  Respectfully submitted,

By:   */s/ C.K. Lee*
C.K. Lee
**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*