UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ERVING MIGUEL MARTINEZ, *on behalf of* :
*himself, FLSA Collective Plaintiffs,* :
*and the Class*, :
                                       :     24-CV-352 (DEH) (RWL)
               Plaintiffs, :
                                         :      **ORDER TO STAY**
       - against -            :     **<u>PENDING ARBITRATION</u>**
                                         :
GAB.K, LLC et al., :
                                         :
               Defendants. :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Erving Miguel Martinez ("Martinez" or "Plaintiff"), on behalf of himself and other similarly-situated persons, filed a collective and class action lawsuit against Defendants GAB.K, LLC ("GAB.K"), Teton Restaurant Group, LLC ("Teton"), and Gabriel Kreuther ("Kreuther") (collectively, the "Defendants") alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); the New York Labor Law, N.Y. Lab. Law § 190 *et seq.* ("NYLL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL").  Defendants now move to stay the action and compel arbitration under an agreement requiring arbitration.  For the reasons that follow, Defendants' motion is GRANTED.[1]

---

[1] "District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp.3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases).

1

**BACKGROUND**

Martinez was an employee of the restaurant Gabriel Kreuther (the "Restaurant"), owned by GAB.K.  (Dorros Aff. ¶ 3.[2])  On or around September 7, 2018, Martinez signed an arbitration agreement (the "First Arbitration Agreement") requiring arbitration of disputes arising between the employer and employees.  (*Id.*)  The Restaurant closed for several months during the COVID-19 pandemic.  When the Restaurant reopened after the pandemic, Martinez signed another arbitration agreement (the "Second Arbitration Agreement" together with the First Arbitration Agreement, the "Arbitration Agreement" or "Agreement") on or around September 11, 2020.  (*Id.* ¶ 4.)  The Second Arbitration Agreement is identical to the First Arbitration Agreement Martinez signed in 2018.  (Dorros Aff., Ex. A, Ex. B.)  The Arbitration Agreement requires "the resolution of disputes that otherwise would be resolved in a court of law … to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial."  (Dorros Aff., Ex. A at 1, Ex. B at 1.)  The Arbitration Agreement further states that the claims covered by the Arbitration Agreement include, *inter alia*, "disputes regarding any city, county, state or federal wage and hour law"; "compensation, meal, or rest periods, expense reimbursement"; and "discrimination or harassment and claims arising under the … Fair Labor Standards Act … and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims."  (*Id.*)

The Arbitration Agreement has a "fee-splitting" provision, requiring the cost of the arbitration to be "borne by EMPLOYER and EMPLOYEE equally, unless otherwise

---

[2] "Dorros Aff." refers to the Affidavit of Eben Dorros In Support Of Defendants' Motion to Compel Arbitration And To Stay Proceedings, filed March 11, 2023.  (Dkt. 14.)

determined by the Arbitrator." (*Id.*, Ex. A at 2, Ex. B at 2.)  The Arbitration Agreement also states that "EMPLOYER AND EMPLOYEE HAVE EACH READ, BEEN PROVIDED WITH A REASONABLE TIME TO REVIEW, AND UNDERSTAND THIS AGREEMENT, AND UNDERSTAND THAT THIS AGREEMENT TO BINDING ARBITRATION CONSTITUTES A WAIVER OF TRIAL BEFORE JUDGE OR JURY AND WAIVER OF PARTICIPATION IN CLASS, COLLECTIVE, OR REPRESENTATIVE ACTIONS." (*Id.*, Ex. A at 2, Ex. B at 2.) The last page of the Arbitration Agreement requires the signature of both employee and employer.  (*Id.*)  While Martinez signed the Arbitration Agreement, GAB.K did not.  (*Id.*)

Martinez was employed by GAB.K until June 2023, when GAB.K approached him regarding his allegedly hostile workplace behavior against his co-workers.  (Dorros Aff. ¶ 6.)  Martinez did not return to work, and GAB.K eventually terminated him on June 19, 2023. (Dorros Aff., ¶ 6; Complaint ("Compl."), Dkt. 1 ¶ 31.)

GAB.K, Teton, and Kreuther move to compel arbitration and to stay the instant action.  In opposing the motion, Martinez asserts that no valid agreement exists because GAB.K did not sign the Arbitration Agreement.  (Pl. Opp. at 1-2.[3])  Martinez further argues that the Court should invalidate the Arbitration Agreement because the fee-splitting provision is unconscionable.  (*Id.* at 2.)  In reply, Defendants contend that New York law does not require an employer to sign an agreement with an employee for it to be valid and enforceable, so long as the employer manifested its assent by tendering the agreement.  (Def. Reply at 1-4. [4])  And, although disputing that the fee-splitting provision

---

[3] "Pl. Opp." refers to Plaintiff's Memorandum Of Law In Opposition To Defendants' Motion To Compel Arbitration.  (Dkt. 21.)

[4] "Def. Reply" refers to Defendants' Reply Memorandum Of Law In Further Support Of Their Motion To Compel Arbitration And Stay Proceedings.  (Dkt. 23.)

is not unconscionable, Defendants have agreed to waive it and pay the entire fee.  (*Id.* at 6.)

## PROCEDURAL HISTORY

On January 17, 2024, Martinez commenced the instant action, asserting claims for alleged violations of the FLSA, NYLL, NYCHRL, and NYSHRL, arising from unpaid wages, unreimbursed costs, and discrimination based on race and national origin. (Compl., Dkt. 1.)  On March 11, 2024, GAB.K, Teton, and Kreuther filed the instant motion to compel arbitration and to stay proceedings.  (Dkt. 12.)  In addition to a supporting memorandum of law, GAB.K also filed the Dorros Affidavit attaching the Arbitration Agreement.  (Dorros Aff., Ex. A, Ex. B.)  On March 25, 2024, Martinez filed his opposition brief along with the Declaration of C. K. Lee ("Lee Decl."), an affidavit from Martinez, and local arbitration rules.  (Dkt. 22.)  GAB.K, Teton, and Kreuther replied on April 1, 2024, at which point the motion was fully briefed.  (Dkt. 23.)

## LEGAL STANDARDS

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), parties can arbitrate their disputes instead of litigating them in court.  Section 2 of the FAA puts arbitration agreements on an "equal footing" with other contracts.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  Agreements to arbitrate thus are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  FAA § 2.

Federal policy favors arbitration.  *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (by enacting the FAA, Congress "declared a national policy favoring arbitration").  At the same time, parties should not be compelled to arbitrate if they did not form a valid and

4

enforceable contract to arbitrate.  *See Necchi S.p.A. v. Necchi Sewing Machine Sales Corp.*, 348 F.2d 693, 696 (2d Cir. 1965), *cert. denied*, 383 U.S. 909 (1966).  Where the parties dispute whether an agreement to arbitrate has been made, the presumption favoring arbitrability does not apply.  *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011).  Nonetheless, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983).

When a party to an arbitration agreement commences litigation and not arbitration, the opposing party may file a motion to compel arbitration and stay the litigation.  FAA §§ 3, 4.  The court reviewing the motion must assess (1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement"; and (3) "if federal statutory claims are asserted, … whether Congress intended those claims to be nonarbitrable."  *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (alteration in original).

A court deciding a motion to compel arbitration applies a standard "similar to that applicable for a motion for summary judgment."  *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 74 (2d Cir. 2017).  That is, the party moving to compel arbitration bears the burden of making "a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'"  *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010). The moving party only needs to show that a valid arbitration agreement exists.  *Id.*  When the moving party has met that burden, the party seeking to avoid arbitration must then demonstrate that the arbitration agreement was "inapplicable or invalid."  *Harrington v. Atlantic Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (quoting *Green Tree*

*Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000)).  In other words, a court faced with a motion under FAA §§ 3 and 4 must determine whether "there is a valid contract to arbitrate between the [parties]," and whether the dispute "is covered by the contract."  *Unique Woodworking, Inc. v. New York City District Council of Carpenters' Pension Fund*, No. 07-CV-1951, 2007 WL 4267632, at *4 (S.D.N.Y. Nov. 30, 2007).  If so, "the role of the court ends and the matter is one for arbitration."  *Id.*

## DISCUSSION

### A.    The Parties Entered Into An Enforceable Arbitration Agreement

GAB.K, Teton, and Kreuther have met their burden to demonstrate the existence of a valid agreement to arbitrate.  Defendants argue that the Arbitration Agreement is valid and enforceable because under New York law employers are not required to sign an arbitration agreement for it to be enforceable.  (Def. Mem. at 7.[5])  Martinez counters that the Agreement is not enforceable because the language of the Agreement contemplated mutual manifestation of assent, which indicates that GAB.K did not intend to be bound by the Agreement until it signed the Agreement.  (Pl. Opp. at 3.)  Defendants' argument prevails.

Determining whether the parties have agreed to arbitrate is a question of state contract law.  *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012).  New York law governs the Arbitration Agreement at issue, and the parties do not dispute its choice of law provision.  (Dorros Aff., Ex. A at 1, Ex. B at 1.)  Under New York law, the existence of a valid arbitration agreement, like other contracts, depends on the parties' "[m]utual

---

[5] "Def. Mem." refers to Defendants' Memorandum Of Law In Support Of Their Motion To Compel Arbitration And To Stay Proceedings.  (Dkt. 13.)

manifestation of assent." *Hegazy v. Halal Guys, Inc.*, No. 22-CV-01880, 2023 WL 8924092, at *3 (S.D.N.Y. Dec. 27, 2023) (quoting *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 29 (2d Cir. 2002)). Mutual assent, however, does not require a signature by both parties; "[i]t is well-established that a party may be bound to an agreement even absent a signature." *Genesco*, 815 F.2d at 846.

When an employee signs an arbitration agreement with an employer, the employee "accept[s] the [employer's] offer to hire [the employee] in exchange for [the employee's] promise to arbitrate." *Valdes v. Swift Transportation Co.*, Inc, 292 F. Supp.2d 524, 531 (S.D.N.Y. 2003). Because the employer made the offer, the employer has no obligation to accept the arbitration agreement. *Id*. Rather, whether to accept or reject falls upon the employee. For these reasons, it is well established that employers are not obligated to sign arbitration agreements for them to be enforceable. *Davis v. Crothall Healthcare, Inc.*, No. 22-CV-07196, 2023 WL 6519603, at *5 (S.D.N.Y. July 7, 2023) (enforcing arbitration agreement only signed by the employee); *Reyes v. Gracefully, Inc.*, No. 17-CV-09328, 2018 WL 2209486, at *3 n.3 (S.D.N.Y. May 11, 2018) (enforcing arbitration agreement that the employer did not sign despite having a designated signature block for the employer); *Valdes*, 292 F. Supp.2d at 531 (rejecting plaintiff's argument that the absence of the employer's signature made the arbitration agreement invalid).

Here, Martinez signed the Arbitration Agreement, thereby accepting GAB.K's offer. It thus is immaterial that the language of the Arbitration Agreement, on which Martinez relies in opposing the instant motion, contemplates GAB.K's signature. Moreover, quite apart from signing an agreement, a party may demonstrate its intent to be bound by suing on the contract and thereby ratifying it. *Glover v. Bob's Discount Furniture, LLC*, 621 F.

Supp.3d 442, 448 (S.D.N.Y. 2022) (citing *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Associates, LLP*, 6 N.Y.3d 371, 812 N.Y.S.2d 435, 437 (2006)).  GAB.K has done so here.  GAB.K prepared the Arbitration Agreement and relied on it to file this motion to compel arbitration.  The Arbitration Agreement is enforceable.

**B.      The Fee-Splitting Provision Is Moot**

With GAB.K having demonstrated that the parties entered into the Arbitration Agreement, the burden shifts to Martinez to show that the agreement was "inapplicable or invalid."  *Harrington*, 602 F.3d at 124.  To do so, Martinez argues that the Arbitration Agreement is unenforceable because the fee-splitting provision is unconscionable.  (Pl. Opp. at 7.)  The fee-splitting provision states that "[c]osts incidental to the arbitration … will be borne by EMPLOYER and EMPLOYEE equally."  (Lee Decl., Ex. A at 2, Ex. B at 2.)  Martinez asserts that because he is a part-time, minimum-wage worker with four dependents, the fee-splitting provision is unconscionable.  (Pl. Opp. at 9.)

Whether that is so is moot.  Defendants have agreed to waive the fee-splitting provision as to Martinez.  (Def. Reply at 6 ("Defendants will agree to … waive the fee-splitting provision of the Arbitration Agreement as to Plaintiff").)  Under New York law, when the employer waives a potentially unconscionable provision in an arbitration agreement, the employee can no longer use that provision as a ground for arguing that the agreement is unconscionable.  *See Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 123-24 (2d Cir. 2010) (accepting the defendants' waivers to enforce specific provisions of arbitration agreements and evaluating the agreements as modified by the waivers); *In re Currency Conversion Fee Antitrust Litigation*, 265 F. Supp.2d 385, 411-12 (S.D.N.Y. 2003) (finding that because defendants offered to pay the arbitration fee and

8

waive the right to shift fees, arbitration costs were no longer grounds for finding the arbitration agreement unconscionable). The fee-splitting provision thus does not stand as an obstacle to enforcing the Arbitration Agreement against Martinez.[6]

## C.       The Arbitration Agreement Covers All Parties

Because the Arbitration Agreement is valid and enforceable, the Court next evaluates the scope of the Arbitration Agreement, specifically to determine which parties are covered by the Agreement. *Daly*, 939 F.3d at 421. The Arbitration Agreement explicitly covers Martinez (employee) and GAB.K (employer); neither party argues otherwise. Defendants argue that the Arbitration Agreement also covers Teton and Kreuther, two non-signatories to the Agreement, because Martinez's claims against Teton

---

[6] Even assuming the issue of unconscionability was not moot, Martinez has not met the burden to show unconscionability. A party contesting the validity of an arbitration agreement based on unconscionability must show that an agreement was "both procedurally and substantively unconscionable when made." *Spinelli v. National Football League*, 903 F.3d 185, 208 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (N.Y. 1988)). The procedural element of unconscionability "concerns the contract formation process and the alleged lack of meaningful choice," whereas the substantive element of unconscionability "looks to the content of the contract." *Ragone*, 595 F.3d at 121-22 (quoting *State v. Wolowitz*, 96 A.D. 47, 67, 468 N.Y.S.2d 131, 145 (2d Dep't 1983)). Here, Martinez failed to allege any procedural unconscionability. While there are "exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone," *id.* at 122, the record is insufficient to come to that conclusion here – there is no evidence of, for example, the actual arbitration costs and whether the arbitrator would require Martinez to pay any of the fees. *See Zambrano v. Strategic Delivery Solutions, LLC*, No. 15-CV-8410, 2016 WL 5339552, at *7-8 (S.D.N.Y. Sept. 22, 2016) (finding fee-splitting provision not unconscionable even though FLSA plaintiffs were low-wage workers because it was "too speculative" to conclude that plaintiffs would not be able to reduce their arbitration costs); *Arakawa v. Japan Network Group*, 56 F. Supp.2d 349, 355 (S.D.N.Y. 1999) (declining to find fee-splitting provision was unconscionable because there was no evidence of what the arbitration costs would be).

and Kreuther rely on the two parties' relationship and roles with GAB.K, which is a signatory to the Agreement.  (Def. Mem. at 8-9.)

Under New York law, non-signatories of an agreement are allowed to enforce the agreement against a signatory based on equitable estoppel.  *Ross v. American Express Co.*, 478 F.3d 96, 99 (2d Cir. 2007).  A non-signatory to an arbitration agreement may compel a signatory to arbitrate via equitable estoppel where:

> (1) the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed and
>
> (2) there is a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the non-signatory.

*Doe v. Trump Corp.*, 453 F. Supp.3d 634, 640 (S.D.N.Y. 2020) (internal quotation marks omitted).

An issue is intertwined with an arbitration agreement when "the merits of an issue between the parties [i]s bound up with a contract binding one party and containing an arbitration clause."  *Denney v. Jenkens & Gilchrist*, 412 F. Supp.2d 293, 298 (S.D.N.Y. 2005) (alteration in original) (internal quotation marks omitted) (quoting *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004)).  Hence, when there is an "identity of [plaintiff's] claims against…defendants," those issues are sufficiently "factually 'intertwined' … and therefore subject to the arbitration agreement."  *Ouedraogo v. A-1 International Courier Service, Inc.*, No. 12-CV-5651, 2014 WL 1172581, at *5 (S.D.N.Y. March 21, 2014).

For the second element, courts examine "the relationship between the non-signatory seeking to compel arbitration and the signatory in whose shoes the non-signatory seeks to stand." *Holzer v. Mondadori*, No. 12-CV-5234, 2013 WL 1104269, at *14 (S.D.N.Y. March 14, 2013). If "*plaintiffs themselves* treated the signatory and non-signatory corporate affiliates as at least somewhat interchangeable with respect to the plaintiffs' rights and responsibilities under the relevant contract," there is a close relationship that warrants estoppel. *Medidata Solutions, Inc. v. Veeva Systems Inc.*, 748 F. App'x 363, 366-67 (2d Cir. 2018) (emphasis in original). This includes a situation where plaintiff "understood [the non-signatory] to be, to a considerable extent, [his] co-employer." *Ragone*, 595 F.3d at 127; *see also Espinosa v. SNAP Logistics Corp.*, No. 17-CV-6383, 2018 WL 9563311, at *3 (S.D.N.Y. April 3, 2018) (plaintiff who made no distinction between the non-signatory defendants as his employers in his opposition paper or affidavit means plaintiff understood the non-signatory defendants to be his co-employers).

Both elements are met here such that Martinez is equitably estopped from challenging application of the Arbitration Agreement to Teton and Kreuther. First, the issues are sufficiently intertwined. Martinez brings his claims equally against GAB.K, Teton, and Kreuther and attempts to hold them liable for the same actions. (Compl. ¶¶ 1-4.) The facts and issues of this dispute with respect to each Defendant are sufficiently "intertwined" with the Agreement, making it reasonable to allow Teton and Kreuther to compel arbitration. *Doe*, 453 F. Supp.3d at 640. Second, Martinez attributes liability to all of the Defendants as his co-employers. For example, throughout the Complaint, Martinez states that "***Defendants employed*** Plaintiff." (Compl. ¶¶ 16, 20, 22, 30, 74, 87 (emphasis added).) Martinez has treated Teton and Kreuther as his co-employers and

viewed them as "interchangeable" regarding his "rights and responsibilities under the relevant contract."    *Medidata*, 748 F. App'x at 366-67; *Doe*, 453 F. Supp.3d at 640. Accordingly, a sufficiently close relationship exists, allowing Teton and Kreuther, together with GAB.K, to compel arbitration.

In any event, Martinez's opposition does not dispute that Teton and Kreuther may invoke arbitration alongside GAB.K.  By failing to address the issue, Martinez concedes that the Arbitration Agreement covers all parties, including Teton and Kreuther.  *See Scott v. JPMorgan Chase & Co.*, No. 13-CV-646, 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014) (plaintiff who failed to respond to defendants' argument that the arbitration agreement covers all defendants and disputes concedes the validity of the arbitration agreement); *Felske v. Hirchmann*, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. March 1, 2012) ("[a] Plaintiff effectively concedes a defendant's arguments by his failure to respond to them"); *Rosenblatt v. City of New York*, No. 05-CV-5521, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) (same).

**D.    The Dispute Falls Within The Scope Of The Arbitration Agreement**

There also is no dispute, and Martinez does not argue otherwise, that the alleged claims in the Complaint fall within the scope of the Arbitration Agreement.  Arbitration clauses that are broad, like the one here, covering "any and all disputes and claims which arise out of or relate to [plaintiff's] employment," should be "interpreted broadly to cover any disputes arising out of the employment relationship."  *E.g.*, *Arakawa*, 56 F. Supp.2d at 352-53 (internal quotation marks omitted).

Martinez has alleged employment-related claims under the FLSA, NYLL, NYCHRL, and NYSHRL (*see* Compl. ¶¶ 72-108), which are "wage-hour" and

discrimination claims under "federal and state statutory … law," and thus his claims fall within the scope of the arbitration agreement. *Kutluca v. PQ New York Inc.*, 266 F. Supp.3d 691, 704 (S.D.N.Y. 2017) (holding FLSA and NYLL claims fall within the scope of arbitration agreement); *see also Puig v. City of New York*, No. 23-CV-08674, 2024 WL 2007829, at *4 (S.D.N.Y. May 7, 2024) (same); *Camilo v. Lyft, Inc.*, 384 F. Supp.3d 435, 440 (S.D.N.Y. 2019) (plaintiff's NYLL claims fell under the scope of the arbitration agreement).

### E.    FLSA Claims Are Arbitrable.

The final question is whether "whether Congress intended [FLSA] claims to be nonarbitrable." *Daly*, 939 F.3d at 421. The answer is no, as it is well-established that FLSA claims are arbitrable.

Federal statutory claims "can be the subject of arbitration, absent a contrary congressional intent." *Oldroyd v. Elmira Savings Bank*, FSB, 134 F.3d 72, 77 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). "The burden of showing such legislative intent lies with the party opposing arbitration." *Id.* at 78.

Here, Martinez does not argue that Congress did not intend FLSA claims to be nonarbitrable. Regardless, the Second Circuit and courts in this District repeatedly have found FLSA claims to be arbitrable.[7] *See Rodriguez v. Parts Authority, Inc.*, 877 F.3d 122, 123 (2d Cir. 2017) ("We conclude that FLSA claims are arbitrable"); *Reynolds v. de Silva*, No. 09-CV-9218, 2010 WL 743510, at *4-5 (S.D.N.Y. Feb. 24, 2010) (finding that

---

[7] Congress expressly excepted from the FAA "contracts of employment of seaman, railroad employees, or any other class of workers engaged in foreign or interstate commerce." FAA § 1. Martinez does not argue, and the Court has no occasion to find, that the Arbitration Agreement is encompassed by that exception.

13

"Plaintiff's FLSA and NYLL claims are subject to arbitration"); *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp.2d 299, 304 (S.D.N.Y. 2010) (ruling that "Congress did not intend FLSA claims to be non-arbitrable"); *Martin v. SCI Management L.P.*, 296 F. Supp.2d 462, 467 (S.D.N.Y. 2003) (there is "no indication" that Congress intended FLSA claims to be nonarbitrable); *Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp.2d 324, 332 (S.D.N.Y. 2003) (same).

Accordingly, the Court holds that Martinez's FLSA claims are arbitrable.

## CONCLUSION

To the extent not discussed above the Court has considered the parties' arguments and found them to be either moot or without merit. For the foregoing reasons, Defendants' motion is GRANTED, and this action is hereby STAYED pending arbitration. The parties shall file a joint status report every six months, or, if earlier, within ten days following completion of arbitration.

SO ORDERED

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: July 18, 2024
        New York, New York

Copies transmitted on this date to all counsel of record.

14